UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN P. MAJORS, SR., | ) |
| Plaintiff, | ) Case No. 1:20-cv-03044 |
| | ) |
| v. | ) Judge Sharon Johnson Coleman |
| | ) |
| TOOTSIE ROLL INDUSTRIES, INC., | ) |
| ELLEN RUBIN GORDON, and | ) |
| JOHN GRODOSKI, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff John P. Majors, Sr. ("Majors") brings this action against Tootsie Roll Industries, Inc. ("TRI"), Ellen Rubin Gordon, and John Grodoski (collectively, "Defendants") for violations of the Family and Medical Leave Act of 1993 ("FMLA") as amended, 29 U.S.C. § 2615, *et seq.* (Counts I and II) and violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq. (Counts III and IV). Defendants move to dismiss the Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motion to dismiss [10] is granted in part and denied in part.

**Background**

The following allegations are taken as true for the purpose of ruling on this motion. TRI is a publicly traded confectionary products company, with approximately 2000 employees nationwide, headquartered in Chicago, Illinois. Defendant Gordon is the Chairwoman and Chief Executive Officer of TRI. Defendant Grodoski is the Head of Human Resources for TRI. Majors was the Vice President of Physical Distribution for TRI. Majors was one of six top executives at TRI, and he reported directly to Gordon.

During spring 2018, Majors was hospitalized twice for sepsis. He returned to work in early May, and worked through the summer and early fall. During a group lunch on October 24, 2018, however, Majors excused himself to rest in his office, explaining he was mentally exhausted and not feeling well physically. He sought FMLA leave to undergo outpatient treatment, which was approved on October 25, 2018.

On November 15, 2018, Majors' doctor submitted paperwork for his short-term disability claim, which revealed to TRI that Majors was being treated for Bipolar Disorder. According to Majors, TRI initially continued to include him in important business decisions during his leave, but TRI ceased all communications with him after November 15. Majors alleged that he was worried that his job would be imperiled if TRI found out about his mental illness because he had previously heard Gordon make negative comments that he believed were targeted at employees with mental illnesses.

Majors received salary raises and annual bonuses every year between 2004 and 2018. He also received deferred compensation awards ("CAP Awards"), which were typically paid out annually in March. Since 2004, Majors received his annual bonus during the first week of January until 2019. On January 8, 2019, Majors sent a text message to TRI's treasurer, Barry Bowen, inquiring about his 2018 annual bonus, which he had not yet received. The treasurer did not respond. Instead, Majors received a text from Grodoski to set up an in-person meeting. They met on January 16, 2019, and Grodoski brought with him long-term disability ("LTD") benefits paperwork for Majors to fill out. At this point, Majors was still undergoing outpatient treatment for his Bipolar Disorder. During the meeting, Majors indicated to Grodoski that he wished to return to work, but Grodoski pushed for separation. Majors alleged that "[a]fter handing Plaintiff the LTD benefits paperwork, Grodoski told Majors it was time for him to think about life after Tootsie Roll." (Amend. Compl. at ¶ 32.)

In the days following, Majors and Grodoski exchanged text messages regarding Majors' employment at TRI. Majors asked about the LTD paperwork and again inquired into whether he could return to work if he was released by his psychiatrist. Grodoski again explained that TRI believed that it would be best for the parties to separate. On January 21, 2019, Majors sent a severance demand letter to TRI, but noted that he wanted to work for TRI for the next ten years. That same day, he texted Grodoski this message: "Hi John, just a quick note to tell you I have finished my program so let me know if you would like me to return or are still heading down the separation path." (*Id.* at 44.) Majors alleged that this period of uncertainty with TRI took a physical and emotional toll on him. Majors also alleged that his treating physician concluded that releasing him "to return to work would be extremely detrimental to his health, well-being, and ability to manage his Bipolar Disorder." (*Id.* at 48.)

In February 2019, TRI informed Majors that he was barred from TRI property, despite still being an employee on leave. In March 2019, Majors was told that he would not receive the 2018 bonus or CAP Award due to his poor performance and costing the company millions of dollars. As a result, Majors filed a complaint with the Illinois Department of Labor against TRI for failure to pay earned wages. In April 2019, TRI and Majors reached a resolution. The parties signed a confidential settlement agreement in which TRI agreed to pay Majors his 2018 bonus and Majors agreed to release any and all claims related to the CAP payment. TRI deposited the CAP Award into Majors' account on June 6, 2019. That same day, TRI informed Majors that he would be placed on an unpaid leave of absence while on LTD. It is unclear from the Amended Complaint exactly when Majors was put on LTD. At this time, Majors has not quit his position at TRI and TRI has not terminated his employment.

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency

3

of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). To survive a motion to dismiss, the plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**Discussion**

Majors alleges that TRI (1) interfered with his rights under the FMLA, (2) retaliated against him for invoking his FMLA rights, (3) discriminated against him in violation of the ADA, and (4) retaliated against him for complaining about discrimination under the ADA. A single issue underlies the FMLA retaliation, ADA discrimination, and ADA retaliation claims: whether Majors plausibly alleged a materially adverse employment action. As such, the Court will address those three claims together after discussing Majors' FMLA interference claim.

*FMLA Interference*

Generally, the FMLA entitles qualifying employees to up to twelve weeks of unpaid leave in a twelve-month period, maintenance of their health and employment-related benefits while on leave, and reinstatement to their previous position or its equivalent at the end of their leave. *Guzman v. Brown County*, 884 F.3d 633, 638 (7th Cir. 2018) (citing 29 U.S.C. § 2612); 29 U.S.C § 2614. It is unlawful for an employer to interfere with these rights. *Guzman*, 884 F.3d at 638 (citing 29 U.S.C. § 2615). To succeed on an FMLA interference claim, an employee must establish that "(1) she was eligible for the FMLA's protections, (2) her employer was covered by the FMLA, (3) she was

4

entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled." *Id.* Here, the only element at issue is TRI's alleged denial of Majors' FMLA benefits.

Majors alleges that TRI interfered with his right to reinstatement. Defendants argue that Majors' "failure to return to work at the conclusion of the twelve-week period of FMLA leave precludes his FMLA interference claim as a matter of law." (Defs.' Mem. in Support of Mot. to Dismiss at 5). This Court agrees. If an employee does not exercise his right to reinstatement after his twelve-week leave expires, he is no longer entitled to that benefit. *James v. Hyatt Regency Chicago*, 707 F.3d 775, 781 (7th Cir. 2013). An employee will lose this right "if, at the end of his twelve-week period of leave, he is either unable or unwilling to perform the essential functions of his job." *Franzen v. Ellis Corp.*, 543 F.3d 420, 426 (7th Cir. 2008).

As an initial matter, the parties dispute the date on which Majors' FMLA leave expired. Majors began his FMLA leave on October 24, 2018. Majors alleges that his FMLA leave ended on January 25, 2019, while Defendants argue that his FMLA leave ended on January 16, 2019. The Court takes judicial notice that the date exactly twelve weeks from October 24, 2018, when Majors began his FMLA leave, was January 16, 2019. *General Elec. Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (citing Fed. R. Evid. 201(b)). Majors' twelve weeks of leave therefore ended on January 16, 2019 instead of January 25, 2019.[1] Consequently, Majors' January 16, 2019 meeting with Grodoski took place on the last day of his protected leave. During that meeting, Majors explained that he was determined to return to work but that he was still undergoing outpatient treatment for his Bipolar Disorder. Though Majors made it clear that he wanted to return to work, he was unable to at that time because he was still going through the outpatient program and had not been release by his physician. Moreover, nowhere in the Complaint does

---

[1] The Court notes that Majors failed to address this issue in his response to Defendants' motion to dismiss.

5

Majors allege that he was cleared to return to work on January 16, 2019. Thus, after January 16, 2019, Majors had no right to reinstatement.

Majors attempts to salvage his claim by arguing that his treating physician would have released him to return to work on January 25, 2019, if TRI's conduct during the January 16, 2019 meeting and subsequent communications between Majors and Grodoski had not exacerbated his condition. Majors' argument is unavailing because the alleged "exacerbation theory" is not accepted in the Seventh Circuit, which has held that "the cause of an injury is irrelevant under the FMLA" and "exacerbation is not a valid theory of liability under the FMLA." *Breneisen v. Motorola, Inc.*, 656 F.3d 701, 705 (7th Cir. 2011). For the purpose of this claim, the Court must consider only whether Majors was able to return to work while his right to reinstatement was still valid, not whether he would have been able to absent allegedly exacerbating conduct.

Majors further contends, however, that *Breneisen* does not apply to this case. He argues that the Seventh Circuit in *Breneisen* distinguished between exacerbating conduct that occurs *after*, rather than *during*, the FMLA's protected period. This distinction does exist in *Breneisen*, but it is separate from the court's unequivocal rejection of the exacerbation theory. *Id.* at 705. Rather, the Seventh Circuit explained that the exacerbating conduct itself can still form the basis of an FMLA claim if that conduct occurs while (and not after) the plaintiff is subject to the FMLA's clearly defined protections. *Id.* This is true not because the conduct was exacerbating but because the conduct itself might be unlawful. *Id.* The exacerbation theory cannot be used to show that otherwise lawful conduct under the FMLA should be considered unlawful. *Id.*

The alleged hostile conduct underlying Majors' inability to return to work is thus more appropriate for his FMLA retaliation claim. As to the interference claim, the Court must consider only whether TRI denied Majors benefits to which he was legally entitled. *Guzman*, 884 F.3d at 638. By his own admission, Majors was not yet released by his physician to return to work at the end of

6

his twelve-week FMLA leave. He was therefore not entitled to a right to reinstatement. Accordingly, Defendants' motion to dismiss Count I of the Amended Complaint is granted.

*FMLA Retaliation, ADA Discrimination, and ADA Retaliation*

Defendants next argue that Majors has failed to sufficiently allege a materially adverse employment action, which is an essential element to his FMLA retaliation claim in Count II, his ADA discrimination claim in Count III, and his ADA retaliation claim in Count IV. In particular, Defendants contend that the alleged adverse employment actions had no impact on the terms and conditions of Majors' employment. Defendants, however, fail to distinguish between adverse employment actions for intentional discrimination claims and adverse actions for retaliation claims.

To explain, "[r]etaliation claims under the FMLA and ADA require three familiar elements: (1) the employee engaged in statutorily protected activity; (2) the employer took adverse action against the employee; and (3) the protected activity caused the adverse action." *Freelain v. Village of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018). "The category of actions prohibited by the statutes' provisions is broader than the category of adverse employment actions prohibited by the statutes' anti-discrimination provisions." *Id.* Specifically, materially adverse actions in FMLA and ADA retaliation claims "are not limited to employment-related activities but include any actions that would dissuade a reasonable employee from exercising his rights." *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 979 (7th Cir. 2008); *see also Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).

Defendants argue that their conduct did not rise to the level of a materially adverse action as their actions did not lead to any "qualitative change" in the terms and conditions of Majors' employment because he was still considered "employed" even when Defendants put him on an unpaid leave of absence in June 2019. As discussed, adverse actions in retaliation claims have a broader definition and need not materially alter the "terms and conditions" of employment like

7

intentional discrimination claims. *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016). That said, Majors has plausibly alleged adverse actions that would dissuade him from engaging in protected activity, namely, that Defendants told him that his only path was separation from the company and that they forced him to take LTD benefits.

As to Majors' intentional discrimination claim under the ADA, plausible allegations of an adverse employment action are required at this juncture. This standard is different than retaliation claims because it concerns the terms and conditions of Majors' employment. *Kurtzhals v. County of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020); 42 U.S.C. § 12112. "Materially adverse employment actions include 'cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished.'" *Kurtzhals*, 969 F.3d at 729 (citation omitted). Construing Majors' well-pleaded allegations as true and all reasonable inferences in his favor, he has plausibly alleged an adverse employment action under this standard because instead of allowing him to return to work, Defendants made Majors go on LTD and then placed him on unpaid leave. Viewing the allegations and all reasonable inferences in Majors' favor, these actions diminished the financial terms of Majors' employment.

Next, Defendants argue that Majors either waived or released certain claims in his April 2019 resolution with TRI concerning his annual bonus. The Confidential Settlement Agreement stemmed from Majors filing a complaint with the Illinois Department of Labor concerning TRI denying Majors' 2018 bonus or CAP Award. The Confidential Settlement Agreement states in part:

> WHEREAS, You have asserted that the Company owes you a performance bonus as compensation beyond your salary for work You performed for the Company in 2018 (the "Claim").
>
> WHEREAS, the Company has disputed that it owes you a performance bonus for 2018.

> WHEREAS, You and the Company (collectively, the "Parties") have reached a full and complete settlement of the Claim with a general release of all Your potential claims as follows:
>
> …
>
> General Release of Claims. In exchange for the Company's obligations under this Agreement, You release any and all claims of any kind that You have or may have against the Company, its current, former and future owners, parents, subsidiaries, or affiliates, or any of their current, former or future partners, officers, directors, employees, fiduciaries, members, attorneys, insurers, or agents (collectively the "Released Parties") that are in any way related to or arising out of the Claim, including but not limited to any claims regarding Your entitlement to a performance bonus for 2018, calculation of the Settlement Payment or any performance bonus the Company has ever paid You, and deductions and/or withholdings from the Settlement Payment or any performance bonus the Company has ever paid You. Except for claims that the law does not permit You to release, this Agreement is intended as a full settlement and compromise of each, every and all claims of every kind and nature, whether known or unknown, arising under common law, statute, or otherwise, that are in any way related to or arising out of the Claim.

(R. 10, Ex. 1, April 2019 Redacted Confidential Settlement Agreement).

"In Illinois, words in a contract that are clear and unambiguous must be given their plain and ordinary meaning." *Royce v. Michael R. Needle P.C.,* 950 F.3d 939, 951 (7th Cir. 2020). Illinois courts construe contracts as a whole, *Sevugan v. Direct Energy Servs.,* LLC, 931 F.3d 610, 618 (7th Cir. 2019), and interpret unambiguous contracts as a matter of law. *In re Duckworth*, 776 F.3d 453, 456 (7th Cir. 2014). Here, the unambiguous language in the parties' settlement agreement defines the word "Claim" as concerning the "performance bonus as compensation beyond your salary for work You performed for the Company in 2018." The agreement states more than once that Majors is releasing all claims "related to or arising out of the Claim." Specifically, the last paragraph states "this Agreement is intended as a full settlement and compromise of each, every and all claims of every kind and nature, whether known or unknown, arising under common law, statute, or otherwise, that are in any way related to or arising out of the Claim." Accordingly, although Majors has waived any claims based on his 2018 performance bonus, that is all he has waived.

On a final note, the proper defendant in ADA claims is the employer itself because there is no individual liability under the ADA. *See Harris v. Allen County Board of Commissioners,* 890 F.3d 680, 683 (7th Cir. 2018); *Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303,* 783 F.3d 634, 644 (7th Cir. 2015). The FMLA's definition of "employer" is broader, however, and encompasses some individual liability. *See* 29 U.S.C. § 2611(4)(A)(ii)(I); *Eppinger v. Caterpillar Inc.*, 682 Fed. Appx. 479, 481 (7th Cir. 2017). The Court therefore dismisses Gordon and Grodoski as Defendants to Majors' ADA claims.

**Conclusion**

The Court grants in part and denies in part Defendant's motion to dismiss [10]. The Court grants Defendants' motion as to Majors' FMLA interference claim with prejudice, but denies the remainder of Defendants' motion. The Court also dismisses Ellen Gordon and John Grodoski as Defendants to Majors' ADA claims because the proper Defendant is TRI alone.

IT IS SO ORDERED.

Date: 3/23/2021　　　　　　　　　　　　　Entered:_____
　　　　　　　　　　　　　　　　　　　　　　SHARON JOHNSON COLEMAN
　　　　　　　　　　　　　　　　　　　　　　United States District Court Judge